MANDATE

15-260-cv
*Fappiano v. City of New York, et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED
BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY
OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the
Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the
7th day of March, two thousand sixteen.

Present:
        PETER W. HALL,
        SUSAN L. CARNEY,
                *Circuit Judges*,
        BRIAN M. COGAN,
                *District Judge.*[*]

_____

SCOTT FAPPIANO,

                *Plaintiff-Appellant*,

       v.                               No. 15-260-cv

CITY OF NEW YORK, HELENE GOTTLIEB, GERALD DONOHUE,
CLYDE DUNBAR, EDWARD MASON,

                *Defendants-Appellees*.

_____

For Plaintiff-Appellant:           ANNA BENVENUTTI HOFFMANN (Nick Brustin,
                                 Emma Freudenberger, and Alexandra Lampert *on
                                 the brief*), Neufeld Scheck & Brustin, LLP, New
                                 York, NY.

_____

[*] Hon. Brian M. Cogan, of the United States District Court for the Eastern District of New York,
sitting by designation.

MANDATE ISSUED ON 05/06/2016

For Defendants-Appellees:                    JEREMY SHWEDER, (Richard Dearing and Cecelia
                                             Chang, *on the brief*), on behalf of Zachary W.
                                             Carter, Corporation Counsel of the City of New
                                             York, New York, NY.

_____

     Appeal from a judgment of the United States District Court for the Eastern District of

New York (Townes, *J.*).

     **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND**

**DECREED** that the order of the district court is **AFFIRMED**.

     Plaintiff-Appellant Scott Fappiano appeals a January 7, 2015 order granting summary

judgment to Helene Gottlieb, Gerald Donohue, Clyde Dunbar, Edward Mason, and the City of

New York (together "Defendants") on Fappiano's 42 U.S.C. §1983 due process claims for

malicious prosecution and denial of a fair trial. On appeal, Fappiano argues that the district court

misapplied the legal standard in its summary judgment analysis and failed to consider the totality

of the evidence. Fappiano also argues that the district court abused its discretion by affirming the

magistrate judge's order that prevented Fappiano from deposing the victim of the crime

Fappiano was charged with committing. We assume the parties' familiarity with the underlying

facts, the procedural history of the case, and the issues on appeal. We affirm.

     We review *de novo* a district court's grant of summary judgment. *Garcia v. Hartford

Police Dep't*, 706 F.3d 120, 126 (2d Cir. 2013) (per curiam). Summary judgment must be

granted if "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether there is a

genuine dispute, we must "resolve all ambiguities and draw all inferences against the moving

party." *Garcia*, 706 F.3d at 127. A party, however, cannot overcome summary judgment by

relying on "mere speculation or conjecture as to the true nature of the facts" because "conclusory

allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). We will uphold a grant of summary judgment "where the nonmoving party adduces nothing more than speculation to support its claims." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 502 (2d Cir. 2001).

We begin by addressing Fappiano's § 1983 due process fair trial claims. A fair trial claim is a civil claim for violations of a criminal defendant's Fourteenth Amendment due process rights. *Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010). A police officer denies a defendant a fair trial when she creates "false information likely to influence a jury's decision and forwards that information to prosecutors." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). A fair trial claim may also arise where the police or prosecutors withhold material exculpatory or impeaching evidence from a defendant. The latter theory of liability is essentially a civil claim seeking damages for a *Brady* violation. *Bermudez v. City of New York*, 790 F.3d 368, 376 n.4 (2d Cir. 2015) ("Police officers can be held liable for *Brady* due process violations under § 1983 if they withhold exculpatory evidence from prosecutors."); *see Poventud v. City of New York*, 750 F.3d 121, 132 n.12 (2d Cir. 2014) (en banc) ("We reject out of hand defendants' contention that *Brady* violations cannot provide a basis for a § 1983 claim.").

A classic *Brady* violation contains three elements: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004) (internal quotation omitted). To establish prejudice, a plaintiff must show the evidence was material; i.e., whether the "evidentiary suppression undermines confidence in the outcome of the trial." *Leka v.*

3

*Portuondo*, 257 F.3d 89, 104 (2d Cir. 2001) (internal quotations omitted). Our limited precedent addressing fair trial claims sounding in a *Brady* violation confirms our understanding that police officers may be held liable for *Brady* violations when they intentionally suppress exculpatory evidence. *See Poventud*, 750 F.3d at 138 (recognizing a *Brady* fair trial claim where the defendants "willfully withheld exculpatory evidence that called into question the testimony of the only witness to place him at the scene of the crime"); *Bermudez*, 790 F.3d at 376 n.4 (noting the existence of a due process claim where officers intentionally misled the prosecutor as to the nature and procedures surrounding a photo identification); *cf. Walker v. City of New York*, 974 F.2d 293, 300 (2d Cir. 1992) (explaining that a municipality's deliberate indifference towards instituting a *Brady* training policy for prosecutors could give rise to § 1983 liability). We have never held that anything less than an intentional *Brady* violation establishes a § 1983 due process claim for damages, however, and we decline to do so here.

Fappiano's claims that Defendant Gottlieb fabricated false information and forwarded it to the prosecutors fail because Fappiano has not produced sufficient evidence, rising above speculation, to create a genuine dispute as to whether Defendant Gottlieb improperly influenced the victim's identification of Fappiano or description of the assault, or as to whether Gottlieb fabricated and misrepresented the importance of the physical evidence collected at the crime scene. Had Fappiano's allegations of Gottlieb's suggestion of a tattoo-hiding M.O. been more than speculative and supported by any evidence, they may have provided circumstantial support for inferring misconduct with respect to the CATCH Unit showing; but Fappiano has failed to produce any such evidence. Thus, Fappiano has not produced evidence to support a reasonable inference of wrongful conduct by Defendant Gottlieb.

Fappiano's fair trial claim based on alleged misconduct by Defendant Dunbar fails for the same reason.  We assume, as we must on summary judgment, *Garcia*, 706 F.3d at 127, that Defendant Dunbar showed the victim a photo array. However, we find unpersuasive Fappiano's argument that, because this fact was impeaching evidence, Dunbar's failure to disclose it was a *Brady* violation that gives rise to § 1983 liability. Regardless of whether the fact that the showing occurred constitutes *Brady* material, Fappiano has not adduced sufficient evidence from which to infer that Dunbar intentionally withheld this evidence. For that reason his civil fair trial claims fail, and we affirm the district court's grant of summary judgment to the Defendants on Fappiano's § 1983 due process claim.

Turning to Fappiano's § 1983 malicious prosecution claims, Fappiano "must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160–161 (2d Cir. 2010) (internal citations omitted). Fappiano's prosecution undoubtedly deprived him "of liberty consistent with the concept of seizure." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995) (internal quotation omitted). Under New York law, however, Fappiano must establish that the "prosecution was initiated against him, that it was brought with malice but without probable cause to believe that it could succeed and that the prosecution terminated in [his] favor." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). The existence of "probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). An "indictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* (internal quotation omitted).

Fappiano has failed to produce evidence from which a reasonable juror could infer that the Defendants lacked probable cause to arrest Fappiano or that the grand jury indictment was procured by "police conduct undertaken in bad faith." *Id.* at 73 (internal quotation omitted). As an initial matter, the Defendants had probable cause to arrest Fappiano because "a victim's identification is typically sufficient to provide probable cause." *Stansbury v. Wertman*, 721 F.3d 84, 90 (2d Cir. 2013). Fappiano's argument that Defendant Gottlieb improperly suggested to the victim that she had selected the correct "suspect" during the Photo Showing at the CATCH Unit and that this was evidence that the Defendants procured probable cause by fraud is unpersuasive because it is premised on speculation and a tortured interpretation of Defendant Gottlieb's deposition and report. *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) ("The mere existence of a scintilla of evidence supporting the non-movant's case is also insufficient to defeat summary judgment." (internal quotation omitted)).

Additionally, Fappiano argues that the Defendants' malfeasance alleged in relation to his fair trial claims is also evidence of fraudulently procured probable cause because "evidence of various wrongful acts on the part of police" may rebut the presumption of probable cause. *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006). For the same reasons we outlined above, Fappiano failed to produce evidence to support his claims that the Defendants fabricated the victim's photo or in-person identifications or manipulated the victim into altering her story as to how the assailant held his pants during the assault such that a jury could find that what was presented to the grand jury "warrant[s] a finding of misconduct sufficient to erode the premise that the Grand Jury act[ed] judicially." *Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004).

Finally, we are unpersuaded by Fappiano's argument that probable cause dissipated after the serology results failed to link Fappiano to the victim because, even assuming that facts

occurring after the grand jury indictment can dissipate probable cause, *see Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983), the serology results were not exculpatory and therefore did not establish the "groundless nature of the charges," *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996). The police officer Defendants, furthermore, are not liable for the prosecutors' decision to pursue the charges after the results failed to link Fappiano to the crime, *see Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994). We affirm the district court's grant of summary judgment to the Defendants on Fappiano's malicious prosecution claims.

Addressing Fappiano's § 1983 conspiracy claims, we note that on appeal Fappiano argues the merits of these claims briefly in a single footnote, and "[w]e do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review." *United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993). Accordingly, we affirm the district court's dismissal of these claims.

We now turn to Fappiano's § 1983 due process fair trial claim against Mason and the City of New York for wantonly destroying potentially exculpatory forensic evidence. Fappiano argues that Mason deprived him of a fair trial by submerging the rape-kit swabs in acid, which destroyed the swabs for further testing, and that the City is liable under *Monell* because it deliberately maintained a policy of destroying rape kit swabs despite knowing the policy resulted in the destruction of potentially exculpatory evidence. *See Monell v. Dep't of Soc. Servs of the City of New York*, 436 U.S. 658, 700-01 (1978).

Although *Brady* prohibits police officers from suppressing exculpatory evidence, "the police do not have a constitutional duty to perform any particular tests" to generate exculpatory evidence. *Arizona v. Youngblood*, 488 U.S. 51, 59 (1988). When a § 1983 fair trial claim is premised upon the failure of the police to preserve potentially exculpatory evidence for future

7

testing, the plaintiff must show that the police destroyed the evidence in bad faith. *Id.* at 58 ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process."). Fappiano contends that our court's decision in *Newton v. City of New York* altered *Youngblood*'s bad faith standard by extending liability to police officers for their reckless behavior handling potentially exculpatory evidence. 779 F.3d 140(2d Cir. 2015). We disagree. In *Newton* we explicitly limited our holding to a municipality's system of post-conviction evidence storage and reaffirmed *Youngblood* by stressing that our holding did not create an "absolute duty on the police to preserve evidence based on a freestanding constitutional due process right." *Id.* at 158. Because Fappiano claims that Mason—acting pursuant to the City's policy—failed to preserve evidence when, at the time, Mason did not know whether the evidence was exculpatory, Fappiano must establish that Mason acted in bad faith. *Youngblood*, 488 U.S. at 58.

Fappiano failed to produce evidence from which a reasonable jury could infer that Mason acted in bad faith when he destroyed the rape kit swabs. Fappiano admits that Mason acted in accordance with the City's policy, and we have previously held that this precise practice—fully submerging the swabs to test for semen—did not at the time constitute bad faith destruction of evidence. *Colon v. Kuhlmann*, 865 F.2d 29, 30 (2d Cir. 1988). Moreover, when Mason conducted the test on the swabs—one day after Fappiano's arrest—Mason could not have known Fappiano's blood type or whether the tests would incriminate or exculpate Fappiano. *See Youngblood*, 488 U.S. at 56 n* ("The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.").

Fappiano's failure to establish his claim against Mason forecloses his claim against the City of New York because in the absence of an underlying constitutional violation by a city employee there is no municipal liability under *Monell. See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the department regulations might have *authorized* the [constitutional violation] is quite beside the point."); *Matican v. City of New York*, 524 F.3d 151, 154 (2d Cir. 2008) (explaining that if there is no constitutional violation by a governmental actor, a city cannot be liable "regardless of whether the officers acted pursuant to a municipal policy or custom"). Thus we affirm the district court's grant of summary judgment as to these claims.

Finally, we review for abuse of discretion the district court's order limiting discovery. *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012). The district court has "broad latitude to determine the scope of discovery and to manage the discovery process." *Id.* The decision to quash a subpoena is "entrusted to the sound discretion of the district court." *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (quoting *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000)). "A district court abuses its discretion only when the discovery is so limited as to affect a party's substantial rights." *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008) (internal quotation omitted). A district court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). Here, the court determined that the victim would be harmed if compelled to testify. Accordingly, the court balanced the victim's interest in maintaining her privacy and preventing unwanted exposure to her past trauma with Fappiano's interest in discovering relevant information related to whether the Defendant officers unduly influenced the victim or manufactured the story of how the rape occurred and whether Gottlieb arranged an improper identification for the victim's husband. The

9

magistrate judge crafted a "prudential and proportionate" ruling that allowed Fappiano to submit specific written questions to the victim, but prevented him from deposing her in person. *EM Ltd.*, 695 F.3d at 207. The court's limited discovery order was well within the "range of permissible decisions," and, thus, we find the district court did not exceed the bounds of its discretion. *In re Fitch*, 330 F.3d at 108.

We have considered all of Fappiano's remaining arguments and find them to be without merit. The judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

10